IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ORTECK INTERNATIONAL INC.                  :
et al.                                     :

      v.                                   : Civil Action No. DKC 2005-2882

                                :

TRANSPACIFIC TIRE & WHEEL,                 :
INC., et al.                               :

## MEMORANDUM OPINION

Presently pending and ready for resolution in this commercial contract and misrepresentation case is the motion by Defendants Transpacific Tire & Wheel, Inc. ("Transpacific"), Giti Tire China ("GTC"), and Brian Chan to dismiss the second amended complaint. (Paper 59).  Defendant Giti Tire (USA) Ltd. ("Giti USA") has not joined the motion to dismiss and has filed an answer to the second amended complaint.  (Paper 60).  The issues have been briefed fully and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, Defendants' motion will be granted in part and denied in part.

## I.  Background

The facts of this case are more fully explained in the court's September 5, 2006 Memorandum Opinion (paper 54, at 2-9), and need not be restated in detail here.  Briefly, Plaintiffs, Orteck International, Inc. ("Orteck") and Venetian Investments, LLC ("Venetian"), allege that Defendants breached promises that were made without the present intent to perform.  Plaintiffs claim that Defendants sought to destroy Orteck's tire distribution business

after taking advantage of its knowledge of the market for tires in the United States and its marketing activities on Defendants' behalf.

Orteck asserts that it had purchased all of the tires produced by the Kiayuan brand tire factory now owned by GTC prior to GTC's acquisition of the factory in 2001. Plaintiffs claim that Defendants promised Orteck the exclusive right to distribute several tire brands manufactured by GTC, including the Kiayuan brand and a successor brand in the United States. Plaintiffs also allege that after promising not to sell tires to Plaintiffs' customers, Defendants used a customer list obtained from Orteck, under the premise of improving customer service, to sell to Orteck's top customers. Orteck alleges that Defendants intended to take advantage of Orteck's efforts to establish a market for GTC tires among Orteck's customers after GTC's acquisition of the Kiayuan plant and planned to destroy Orteck's business to create their own distribution network.

Plaintiffs also contend that Defendants promised to share the costs of a tire warehouse facility with Orteck without intending to do so, as part of Defendants' alleged plan to drive Orteck out of business. Plaintiffs claim that Defendants and a group of related entities engaged in a similar pattern of fraudulent conduct to take advantage of tire distributors in the United States to establish a customer base for their products.

2

Plaintiffs initiated this action by filing a complaint on October 21, 2005. Plaintiffs filed an amended complaint on November 4, 2005, along with a motion for preliminary injunction on November 18, 2005, which was denied by Order entered January 6, 2006. Plaintiffs' amended complaint asserted thirteen counts, including claims for fraud, participation in a racketeering conspiracy, negligent misrepresentation, breach of contract, conversion, intentional interference with contractual and business relationships, unjust enrichment, promissory estoppel, and civil conspiracy. Defendants moved to dismiss the amended complaint (paper 53), and this motion was granted in part and denied in part by the court's September 5, 2006 Order, which granted Plaintiffs leave to replead their allegations of fraud, racketeering, negligent misrepresentation, and promissory estoppel. (Paper 55). Plaintiffs filed a second amended complaint on September 20, 2006. (Paper 58). On October 5, 2006 Defendants GTC, Brian Chan, and Transpacific moved to dismiss six counts of the second amended complaint: Count I, alleging fraud; Counts II-IV, alleging racketeering activities; Count V, alleging negligent misrepresentation; and Count X, alleging promissory estoppel.

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

3

Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 n.3 (2007). That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

Some of Plaintiffs' claims are based on alleged fraud, and are thus subject to heightened pleading standards. Fed.R.Civ.P. 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The circumstances of an alleged fraud that must be pled pursuant to this provision "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B. v. Tandem Nat'l Mortgage, Inc.*, 197 F.Supp.2d 298, 313-14 (D.Md. 2000) (quoting *Windsor Assocs. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983)). "The purpose of this rule is to provide the defendant fair notice of the basis of plaintiff's claim and to protect defendant's

4

reputation from groundless accusation of fraud incited by the possibility of an *in terrorem* increment in the settlement value of a lawsuit." *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F.Supp.2d 785, 798 (D.Md. 2002)(internal quotation marks omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court must disregard the contrary allegations of the opposing party. *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In sum, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1965 (internal citations omitted).

"In deciding a Rule 12(b)(6) motion, the court will consider the facts stated in the complaint and the documents attached to the complaint.  The court may also consider documents referred to in the complaint and relied upon by plaintiff in bringing the action." *Abadian v. Lee,* 117 F.Supp.2d 481, 485 (D.Md. 2000) (citing *Biospherics, Inc., v. Forbes, Inc.,* 989 F.Supp. 748, 749 (D.Md. 1997), *aff'd,* 151 F.3d 180 (4th Cir. 1998)).  When doing so, the court need not convert a Rule 12(b)(6) motion to dismiss to one for summary judgment so long as it does not consider matters "outside the pleading."  *See* Fed.R.Civ.P. 12(b) ("If [on a 12(b)(6) motion to dismiss,] matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ."); *Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 260-61 (4th Cir. 1998).

## III.  Fraud

Plaintiffs assert a fraud claim based on three alleged statements of future intent.  They allege that Defendants agreed to make Orteck an exclusive dealer of certain tire brands, not to sell to Orteck's customers, and to share costs related to a Maryland tire warehouse.  Plaintiffs contend that Defendants did not intend to fulfill these statements of future intent at the time they were made.

6

The Court of Appeals of Maryland has explained the five elements required to state or prove a claim alleging fraudulent statements under Maryland law.

> To prove an action for civil fraud based on affirmative misrepresentation, the plaintiff must show that (1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.

*Hoffman v. Stamper*, 385 Md. 1, 28 (2005).  With regard to the second element, when the alleged fraudulent statement concerns the defendant's future intent, the plaintiff must plead and ultimately prove that the statement was "'made with an existing intention not to perform[.]'"  *Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987) (quoting *Sims v. Ryland Group, Inc.*, 37 Md.App. 470, 472 (1977)).

Plaintiffs' fraud claims were previously dismissed without prejudice for failure to comply with the heightened pleading requirements of Fed.R.Civ.P. 9(b).  (Paper 54, at 27-32). Plaintiffs have expanded and reasserted their fraud allegations. Defendants now contend that email messages relied upon by Plaintiffs do not support Plaintiffs' pleadings, that any reliance on Defendants' alleged statements was not reasonable in light of

the text of the email messages, and that Plaintiffs' allegations as to Defendants' present intent not to perform their promises are insufficient.    Because  Plaintiffs  rely  directly  on  the  email communications in the complaint (paper 58 ¶¶ 94-105), the court can consider the text of the email messages, which were submitted as exhibits in support of Plaintiffs' motion for preliminary relief, without converting Defendants' motion to dismiss to a motion for summary judgment.  *See Abadian,* 117 F.Supp.2d at 485; Fed.R.Civ.P. 12(b).

## A.   Warehouse Fraud Allegations

Plaintiffs allege two misrepresentations as a basis for their claims that Defendants fraudulently promised to pay a portion of the costs associated with outfitting and operating a tire warehouse in Maryland.    Plaintiffs  allege  that  two  representatives  of  GTC and Transpacific, Ronny Hoesada and Chris Lee, traveled to Maryland and  met  with  Orteck's  representatives  on  approximately  June  8, 2004.

> Hoesada  and  Lee  proposed  that  Orteck,
> TransPacific and GT China form a joint venture
> and  establish  a  warehouse  located  in  Silver
> Spring, Maryland (the "Maryland Warehouse") to
> store  and  distribute  tires.    The  Maryland
> Warehouse would be a storage and distribution
> facility for GT brand tires.   Hoesada and Lee
> proposed that GT China and TransPacific would
> pay half of the expenses associated with the
> Maryland Warehouse.

(Paper 58 ¶ 130).  Plaintiffs also allege that in September or October 2004, Brian Chan placed a telephone call on behalf of

8

Transpacific and GTC to Sonny Veen, Orteck's representative.
During this call,

> Chan told Veen that he was in China and he had
> just met with Sjamsul Nursalim, who controlled
> GT China and TransPacific.  Chan advised Veen
> to purchase the Maryland Warehouse because Mr.
> Nursalim (also called Mr. Lim) had "big plans"
> for Orteck and GT China and TransPacific's
> relationship in the future.

(*Id.* ¶ 132).  Plaintiffs claim that Defendants knew these
representations were false at the time they were made because
"Defendants did not intend to perform under the Maryland Warehouse
Agreement" and because the misrepresentation "was a part of a
fraudulent scheme . . . to intentionally and maliciously harm
Orteck so that it could not compete with [Defendants]." (*Id.* ¶¶
135-137).  Plaintiffs allege that Defendants made the misstatements
"for the purpose of causing Orteck and Venetian to expend funds in
reliance [on Defendants' statements] . . . to weaken Orteck
financially so that they could eliminate Orteck as a competitor."
(*Id.* ¶ 138).

As Defendants contended in support of their motion to dismiss,
Plaintiffs' pleadings in the second amended complaint do not allege
the circumstances of this fraud claim with adequate precision.
Plaintiffs state that Hoesada and Lee were representatives of both
Transpacific and GTC at the time of these statements, but have not
alleged any basis for this agency relationship.  Plaintiffs also
have not specified the circumstances of any statements attributable

to either individual.  Plaintiffs have thus failed to specify the role that each defendant played in this alleged misstatement.  *See Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D.Md. 2000) (holding that agency relationship must be  pled with particularity when it is a necessary link in a claim of fraud); *Harte-Hanks Direct Mktg./Balt., Inc. v. Varilease Tech. Fin. Group, Inc.*, 299 F.Supp.2d 505, 525-526 (D.Md. 2004) (citing *Adams*, 193 F.R.D. at 250).

Plaintiffs provide more context for the second alleged misrepresentation by Brian Chan, including the basis for his alleged agency relationship with GTC and Transpacific, (paper 58 ¶¶ 42, 132), but have not adequately alleged that any misrepresentation was made with the required mental state.  "Malice, intent, knowledge, and other condition of mind of a person may be averred generally" pursuant to Fed.R.Civ.P. 9(b), but even general averments must allege actual facts rather than bare legal conclusions in order to state a claim.  *Papasan*, 478 U.S. at 286; *United Black Firefighters*, 604 F.2d at 847.  A plaintiff asserting fraud based on a statement of future intent must allege some additional facts, beyond the actual failure to perform and a mere conclusion of present intent, to support the inference that the defendant intended not to perform its promise at the time the promise was made.  *See Kwang Dong Pharm. Co. v. Han*, 205 F.Supp.2d 489, 495 (D.Md. 2002); *Sims v. Ryland Group, Inc.*, 37 Md.App. 470,

472 (1977) ("To withstand demurrer . . . the allegation of an
intention not to perform must be predicated on sufficient facts and
not be phrased in merely conclusory terms.").

Other than Defendants' failure to abide by the alleged
warehouse agreement and other alleged agreements, Plaintiffs plead
no facts as the basis for their conclusory allegation (paper 58 ¶¶
135-38) that Defendants did not intend to share the costs of the
Maryland warehouse and that Mr. Nursalim did not have "big plans"
for Defendants' relationship with Orteck at the time these
representations were made.  Accordingly, Plaintiffs have failed to
state a claim for fraud related to the alleged warehouse agreement,
and this claim will be dismissed.

**B.  Exclusive Distributorship and Customer List Allegations**

Plaintiffs claim that Defendants engaged in a series of
fraudulent misrepresentations related to promises that Orteck would
be an exclusive distributor of certain tire brands and that
Defendants would not sell to Orteck's customers.  Plaintiffs allege
that the original exclusive distributorship agreement, which they
claim was a misrepresentation made without the present intent to
perform, arose from an oral discussion among Sonny Veen, Brian
Chan, and YC Chong at a Specialty Equipment Market Association
trade show in Las Vegas, Nevada in 2001.  (Paper 58 ¶ 28).
Plaintiffs also allege that this agreement was confirmed by an
exchange of email messages between Sonny Veen, of Orteck, and Sunny

11

Zhang, Lily Huihua, and YC Chong, allegedly on behalf of
Defendants.  Veen's November 7, 2001 email purported to include the
terms of the alleged oral exclusive distributorship agreement as
Veen understood them.  It stated that Orteck would continue to
receive and distribute GTC's entire production of Kiayuan brand
radial truck tires and that Defendants would not distribute these
tires to other customers in the United States, and it described
more detailed distribution arrangements for Runway brand tires.
(Paper 58 ¶¶ 30-31; Paper 5, Veen Decl., Ex. H, at 1).  Chong's
return email initially stated "Dear Sonny, it.s good that we
discussed some major issues in LV.  I would like to inform that
there is an error in point 1).  In the meeting, we mentioned that
we would sell Kai Yuen brand to you in USA but not Canada.  Pls
take note."  (Paper 5, Veen Decl., Ex. H, at 1 (original spelling
and punctuation retained)).

     The second misrepresentation identified by Plaintiffs is an
email message from Huihua to Veen on February 1, 2002, allegedly
confirming an oral agreement reached among Veen, Chong, Huihua, and
Chan during a trip by Veen to China to meet with GTC
representatives in January 2002.  Plaintiffs allege that at the
meeting, Chong, Huihua, and Chan promised that although the Kiayuan
brand would change to the brand name Primewell, "Orteck would
remain the exclusive seller of the remaining Kiayuan tires
manufactured by the Kiayuan factory and Orteck would become the

exclusive seller of the Primewell brand tires once these tires were manufactured by the Kiayuan factory." (Paper 58 ¶ 37). With regard to this agreement, Huihua's February 1, 2002 email states: "[w]e thank you for your visit to our office on Jan. 22. 2002. We would like to minute major points discussed as follows: . . . The branding policy is discussed. Orteck would handle the Prime Well brand in the USA market when the side plating is ready." (Paper 5, Veen Decl., Ex. H, at 2). Plaintiffs also allege that this agreement was confirmed again by YC Chong on behalf of GTC at a meeting with Veen that took place in New York during the first week of September, 2002. At this meeting, Veen and Chong "discussed their ongoing relationship and their agreement that Orteck would be the exclusive distributor of PrimeWell tires. Chong also offered for Orteck to exclusively distribute GT's Runway tire and Orteck accepted." (Paper 58 ¶ 40).

Plaintiffs also allege a misrepresentation in the form of an alleged promise made by Brian Chan confirming the exclusive distributorship and indicating that Defendants would not sell tires to any of Orteck's customers. Plaintiffs allege that during a meeting "in late January or early February 2003" when Veen met with Chan at Transpacific's offices in California "Chan agreed that Transpacific and GT China would not sell to Orteck's customers." (Paper 58, ¶ 43). Plaintiffs contend that this misrepresentation was subsequently confirmed by an email exchange between Veen and

Chan.  (*Id.* ¶¶ 44-47).  Veen sent an email on February 7, 2003 that
purported to summarize the agreements reached at his prior meeting
with Chan.   Veen stated, with regard to Plaintiffs' current
allegations:

> I requested you in the meeting and you agreed
> not to offer Primewell and Milestone brands to
> any other company in the USA and Canada.  Most
> of the tires sold in Canada come back to the
> USA and disturb our marketing efforts.  You
> may offer any other brands to these markets.
>
> . . .
>
> Few of our large dealers are:  Treadways,
> laramie, Dunlap & Kyle, GCR(Bridgestone),
> American Tire Distributors (Heafner), S & S
> tire, Friend Tire, Reliable tire, Del-Nat
> Crop, A to Z tire, Purcell Tire, and many
> other regional distributors.
>
> As per our understanding you will not offer
> any of these tires to them."

(Paper 5, Veen Decl., Ex. R, at 2).  Chan replied by email dated
February 19, 2003.  With regard to the issues raised by Veen and
quoted above, he stated:

> Regarding the minutes of meeting, I must
> clarify with some points:
>
> 1) Market:
> Orteck should inform us which customer and
> territories they are working on.  So we will
> not interfere Orteck customers as long as they
> can penetrate the market as requested by GT
> group and pay the invoice on time.
>
> . . .
>
> These are the points that I want to add to our
> discussion.

(*Id.* at 1-2).   Veen sent Chan another email, dated February 26, 2003, listing five of the customers also listed in Veen's earlier email, and requesting "[s]ince we are already selling [to] the following customers please do not offer Primewell OR GT brand radial truck to them."[1]   (Paper 5, Veen Decl., Ex. S).   Chan responded with an email stating:  "Sonny, We will not sell to these customers.  Brian Chan[.]"  (*Id.*)

Plaintiffs assert that at the time each of these alleged misstatements was made, Defendants did not intend to follow through on their promises:

> Defendants intended for Orteck to rely on the misrepresentations.   The purpose of the misrepresentations was to induce Orteck to continue to market, sell and forecast demand for GT brand tires for a long enough period of time to cause Orteck to become reliant on the sale of GT brand tires and to allow the Fraud Defendants to learn how Orteck became so successful in the sale of GT brand tires. After the Fraud Defendants learned the key to Orteck's success and the identity of Orteck's customers, they intended to sell tires to Orteck's customers and destroy and eliminate Orteck as a competitor, and build their own business to the detriment of Orteck.

(Paper 58 ¶ 107).

Defendants contend that Plaintiffs' pleadings do not assert any facts to support this conclusory allegation that Defendants did

---

[1] The chronology of these email messages is unclear.   The email Veen received from Chan is dated as sent on February 25, but this email contains as block quoted history the email Veen had sent to Chan, which is dated as sent on February 26.

not intend to carry out their alleged statements of their future intent at the time these statements were made. (Paper 59, at 8-9).[2]  As explained above with respect to the warehouse agreement fraud allegations, Plaintiffs' allegations regarding Defendants' mental state need not meet the heightened pleading standard of Fed.R.Civ.P. 9(b), but must nonetheless allege actual facts supporting each element of fraud. *Papasan*, 478 U.S. at 286; *United Black Firefighters*, 604 F.2d at 847.

Plaintiffs have alleged no facts, apart from Defendants' failure to perform under the alleged agreements, establishing that Defendants had a present intent not to perform at the time the alleged misstatements were made.  Plaintiffs suggest a motive for Defendants' alleged intentional misstatement of their future actions, arguing that Defendants sought to take advantage of Orteck's marketing and design experience while ultimately moving toward distributing their own products.  (Paper 58 ¶ 107). Plaintiffs do not plead actual facts that support this conjecture as to Defendants' state of mind.  Plaintiffs assert that Defendants failed to fill tire orders properly, including some orders in 2004 (*id.* ¶ 66-67), and attempted to cash an expired letter of credit in 2005 (*id.* ¶ 76), but this subsequent conduct provides little, if

---

[2]  It is not necessary to address Defendants' additional arguments that Plaintiffs' pleading as to the misrepresentations and Plaintiffs' actual reliance are also insufficient, because, as discussed further below, the fraud claims will be dismissed.

any, support for Plaintiffs' conclusory allegations as to Defendants' intent not to honor their promises at the time they were made, between 2001 and 2003.   Plaintiffs have alleged no additional facts to support their conclusory allegation that Defendants lacked present intent to perform under the alleged promissory misrepresentations, and as a result Plaintiffs' fraud claims will be dismissed.  *See Kwang Dong Pharm. Co.*, 205 F.Supp.2d at 495; *Sims*, 37 Md.App. at 472.

## IV. Racketeering

In Counts II-IV of the first and second amended complaints, Plaintiffs assert claims under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964, based on allegations of wire and mail fraud. In its previous opinion, the court noted that Plaintiffs could meet the requirement that a RICO plaintiff prove a "pattern" of racketeering activity only by alleging, in greater detail, their claims of a pattern of fraud against various tire distributors in the United States.  (Paper 54, at 45-47).  Plaintiffs' RICO claims were dismissed with leave to replead because Plaintiffs' allegations of fraud upon other tire distributors, Reliable Tire Company ("Reliable") and Global Tire Network ("GTN"), were vague and did not clearly identify specific acts of mail and wire fraud. (*Id.* at 47).   In the second amended complaint, Plaintiffs have expanded their allegations that Defendants and others engaged in

fraud against Reliable and GTN.  Defendants argue that Plaintiffs'
renewed allegations also fail to allege fraud with particularity.[3]

Allegations of mail or wire fraud relied upon to establish a
pattern of racketeering acts under RICO must be pled with
specificity pursuant to Fed.R.Civ.P. 9(b).  *See GE Inv. Private
Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001);
*Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989)
(quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806
F.2d 1393, 1400-01 (9th Cir. 1986)).  As with common law fraud
claims, this heightened pleading requirement, at a minimum,
requires that Plaintiffs identify the time, place, contents, and
speaker of any alleged misrepresentations, along with what was
obtained by the statement.  *See Superior Bank*, 197 F.Supp.2d at
313-14.

Plaintiffs allege that Defendants were part of a racketeering
enterprise that engaged in acts of mail and wire fraud targeting
Orteck, Reliable, and GTN.  Plaintiffs have not pled the
circumstances of any specific misstatements that form the basis of
the alleged fraud upon Reliable and GTN.  Plaintiffs contend that
enterprise participants, including Seyen Trading and PT Gajah
Tunggal TBK, participated in wire and mail fraud targeting GTN and

_____

[3] Defendants raise several additional arguments for dismissal
of Plaintiffs' RICO claims.  It is not necessary to address these
arguments, because, as explained further below, Plaintiffs' RICO
allegations will be dismissed for failure to allege with
particularity any fraud targeting other tire distributors.

Reliable.  Plaintiffs allege generally that "through the offer of exclusive distributorship, the Enterprise Participants obtained the benefit of the knowledge, experience and customer base of . . . Reliable Tire, GTN and Orteck. . . . After acquiring [this] information . . . the Enterprise Participants would assist in cutting off the supply of tire products to the U.S. companies." (Paper 58 ¶ 165).  Plaintiffs do not, however, offer more specific allegations to substantiate their claims of fraud against Reliable and GTN.  They do not allege any specific false statements of fact or future intent made to Reliable or GTN, any specific promise of an exclusive distributorship made to Reliable or GTN, or any other specific means through which the enterprise participants misled or deceived Reliable or GTN.

Plaintiffs allege that Reliable distributed tires manufactured by enterprise participants subject to a distribution agreement, (paper 58 ¶ 172), but Plaintiffs do not allege the terms of this agreement, whether those terms were ever breached, or whether the manufacturer entered into the distribution agreement with Reliable while intending not to perform under the agreement.  Plaintiffs specifically allege six statements made by enterprise participants with respect to Reliable.  These include "[c]orrespondence between Seyen Trading Inc. . . . and Tunggal wherein Seyen notified Tunggal that Reliable did not want to 'prepay' Seyen for tires[,]" "[c]orrespondence between Seyen and Reliable that Seyen

19

subsequently forwarded to Tunggal concerning the relationship[,]" a "[f]ax from Gajah Tunggal to Seyen Trading wherein Gajah Tunggal mentions that Reliable Tire provided Gajah Tunggal with tire information[,]" a "[s]preadsheet detailing sales of Gajah Tunggal products that was prepared based upon information that Seyen Trading provided to Gajah Tunggal[,]" a "[l]etter from Seyen Trading to Gajah Tunggal wherein Seyen Trading references Reliable Tire[,]" and a "[l]etter from Gajah Tunggal to Seyen Trading wherein Gajah Tunggal references a trip . . . to visit Reliable Tire." (*Id.* ¶ 177). Plaintiffs allege that "these mail and wire communications were fraudulent in that they were designed to mislead Reliable Tire into committing significant resources to the sale of GT tire products and then those products were not delivered." (*Id.* ¶ 178).

Plaintiffs fail to identify any particular misrepresentation or to explain the circumstances of how, when, and by whom Reliable was allegedly deceived, as required to state a fraud claim, including wire or mail fraud, with particularity under Fed.R.Civ.P. 9(b). Indeed only two of the six communications identified by Plaintiffs were communications to Reliable: a vaguely identified communication regarding the alleged enterprise participants' relationship with Reliable, and a letter mentioning a future trip to meet with Reliable. (*Id.* ¶ 177(b)&(f)). Neither of these communications can establish the particular circumstances under

which Plaintiffs allege Reliable was deceived. *See Superior Bank*, 197 F.Supp.2d at 313-14.

In support of their allegations of a fraudulent scheme against GTN, Plaintiffs claim that GTN agreed to allow Brian Chan to work as an "intern/observer" in their offices as part of a proposal to create a joint venture. (Paper 58 ¶¶ 200-203). After the internship, Plaintiffs contend, GTN learned that alleged enterprise participants were offering GT brand tires to GTN's customers at lower prices than GTN offered, which ultimately caused GTN to go out of business. (Paper 58 ¶¶ 204-208). Plaintiffs allege that enterprise participants committed wire fraud against GTN based on the discussions of the joint venture and Chan's internship.

> On August 7, 2002 and August 10, 2002, JP Chavy, an employee or agent of Seyen Trading, through JP Chavy, sent a facsimile to Brian Fisher, the president of GTN. The facsimiles proposed to attach documents that set forth the details of a joint venture between GTN, on the one hand, and Seyen Trading and Gajah Tunggal on the other. The facsimiles also proposed to attach an employment contract for Brian Fisher. JP Chavy knew that the proposals set forth in the August 7, 2002 and August 10, 2002 facsimiles were false, or were made with reckless indifference to the truth. The purpose of the facsimiles was to cause GTN to believe that Seyen Trading and Gajah Tunggal were acting in good faith in connection with the joint venture proposal and to cause GTN to rely on the joint venture proposal. As a result of this reliance, GTN permitted Chan to work in GTN's offices as an intern/observer. While Chan was granted access to GTN's offices, Chan obtained GTN's customer list.

(Paper 58 ¶ 211(a)).  Plaintiffs identify the time and sender of the fax that they apparently allege to be a misrepresentation and assert that JP Chavy knew it was false when it was sent, but do not specify the content of the statement or what it is about the proposal that they allege JP Chavy knew was false.  Thus, Plaintiffs have not alleged the circumstances of the alleged fraud as required by Fed.R.Civ.P. 9(b).  *See Superior Bank*, 197 F.Supp.2d at 313-14.  Because Plaintiffs have not alleged the circumstances of mail and wire fraud against either Reliable or GTN with adequate precision, Plaintiffs' RICO claims in Counts II-IV of the second amended complaint will be dismissed.

## V.  Negligent Misrepresentation

Plaintiffs' claims for negligent misrepresentation in the first amended complaint were dismissed with leave to replead by the court's September 5, 2006 Order.  Plaintiffs have reasserted their negligent misrepresentation claims in Count V of the second amended complaint.  As the court previously noted, a plaintiff must allege the following five elements to assert a claim of negligent misrepresentation under Maryland law:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;(2) the defendant intends that his statement will be acted upon by the plaintiff;(3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;(4) the plaintiff, justifiably, takes action in reliance on the statement; and

22

> (5) the plaintiff suffers damage proximately
> caused by the defendant's negligence.

*Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 136 (2007) (quoting *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 337 (1982)).

As with a fraud claim, predictive statements about future events generally are not actionable as negligent misrepresentations. *See Cooper v. Berkshire Life Ins. Co.*, 148 Md.App. 41, 73 (2002). If the party making a representation about its future conduct knew at the time the statement was made that it was false, the claim converts to one of *fraudulent* misrepresentation, but allegations of intentional misrepresentation do not properly state a claim for *negligent* misrepresentation. *See Heritage Oldsmobile-Imports v. Volkswagen of Am., Inc.*, 264 F.Supp.2d 282, 291 (D.Md. 2003) (applying Maryland law). In *Weisman v. Connors*, 312 Md. 428, 454-56 (1988), the court noted some narrow exceptions under which statements regarding future intentions may be actionable as negligent misrepresentations. The court stated that where a defendant had a high degree of control over the "future action or intention he was 'expecting,'" such a statement could provide the basis for a negligent misrepresentation claim. *Id.* at 454-55. In response to the defendant's argument that he could not negligently misrepresent his own present intention, the court explained that "[i]n the making of representations, the negligence may occur either in obtaining or in

communicating the information imparted." *Id.* at 456 (internal quotation marks omitted).

The negligent misrepresentation claims asserted in Plaintiffs' first amended complaint were dismissed because Plaintiffs failed to plead with the requisite specificity under Fed.R.Civ.P. 9(b) the basis for and circumstances of the alleged negligent misrepresentations. (Paper 54, at 52-53). The court also noted that because Plaintiffs' allegations were not entirely clear, it was impossible to determine whether Defendants owed Plaintiffs a duty or whether an alleged misstatement of Defendants' future intent could be negligent. (*Id.* at 53 n.37). Plaintiffs have expanded these allegations in the second amended complaint, but Defendants argue that the revised allegations do not state a claim for negligent misrepresentation.

Plaintiffs claim that Defendants negligently misrepresented their intentions as to the same promises of future intent that are the basis of Plaintiffs' fraud allegations: to make Orteck an exclusive distributor of certain tire brands, not to sell to Orteck customers, and to pay for half of the costs associated with a tire warehouse Orteck established in Maryland. (Paper 58 ¶¶ 238, 240). Plaintiffs assert that Defendants negligently made each misstatement because Defendants knew at the time they made the statements that they did not intend to act in the manner they

described.  With respect to the alleged exclusive distributorship and the customer list misstatements, Plaintiffs assert that:

> GT China, TransPacific and Chan undertook the . . . [misrepresentations] in violation of the applicable standard of care because they undertook these acts with the intention to defraud and harm Orteck or did so negligently, with the intention not to perform under their agreements to permit Orteck to exclusively sell the Kaiyuan and Primewell brand of GT Tire and not to sell to Orteck's customers.

(*Id.* ¶ 239).  With respect to the warehouse agreement misstatements, Plaintiffs allege that:

> GT China and TransPacific undertook the . . . [misrepresentations] in violation of the applicable standard of care because they undertook these acts with the intention to defraud and harm Orteck, not with the intention to perform under their agreements to form a joint venture with Orteck to establish the Maryland Warehouse, to pay half of the expenses of the Maryland Warehouse and to lease the Maryland Warehouse from Orteck, if Orteck purchased the building that housed the Maryland Warehouse.

(*Id.* ¶ 241).

Defendants contend, among other arguments, that Plaintiffs have not alleged that Defendants acted negligently in making the alleged representations.  Plaintiffs do not assert that the alleged misrepresentations with respect to the warehouse agreement were made negligently, but instead allege that they were made intentionally with the intent to harm Orteck.  (Paper 58 ¶ 241).

Plaintiffs allege that Defendants acted "with the intention to defraud and harm Orteck or did so negligently" in making the

25

alleged client list and exclusive distributorship promises. (*Id.* ¶ 239). Plaintiffs have not supported this conclusory allegation by alleging actual facts that could support an inference that Defendants were "negligen[t] . . . either in obtaining or in communicating the information imparted." *Weisman*, 312 Md. at 456. Thus, even taking Plaintiffs' factual allegations as true and drawing all favorable inferences in Plaintiffs' favor, there is no basis to conclude that Defendants "*meant, but mistakenly failed*, to communicate intentions or expectations other than those that [they] did communicate." *Id.* (emphasis added).

Plaintiffs also allege that Defendants *intentionally* misrepresented their plans with regard to the exclusive distributorship and sales to Orteck's customers, but these allegations are insufficient to state a claim for *negligent* misrepresentation. *See Heritage Oldsmobile-Imports*, 264 F.Supp.2d at 291. Furthermore, as discussed with respect to Plaintiffs' fraud allegations above, Plaintiffs have not alleged any actual facts to support their conclusory allegations that Defendants did not intend to fulfill their promises at the time the promises were made. Plaintiffs have, therefore, failed to state a claim for intentional or fraudulent misrepresentations, and Count V of the second amended complaint will be dismissed.

**VI.   Promissory Estoppel**

Count X of Plaintiffs' second amended complaint reasserts and expands upon the promissory estoppel claims that were dismissed with leave to replead by the court's September 5, 2006 Order.   The Maryland Court of Appeals has explained the four elements required to state a promissory estoppel claim:

> 1. a clear and definite promise; 2. where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; 3. which does induce actual and reasonable action or forbearance by the promisee; and 4. causes a detriment which can only be avoided by the enforcement of the promise.

*Pavel Enters., Inc. v. A.S. Johnson Co.*, 342 Md. 143, 166 (1996). "Damages recoverable under a claim of detrimental reliance are carefully circumscribed; the plaintiff may recover only those specific expenditures made in reliance upon the defendant's promise."   *RCM Supply Co. v. Hunter Douglas, Inc.*, 686 F.2d 1074, 1078-79 (4th Cir. 1982) (applying Maryland law).

Plaintiffs' promissory estoppel allegations in the first amended complaint were dismissed because Plaintiffs failed to allege properly Defendants' reasonable expectation of reliance and Plaintiffs' actual reasonable reliance on the alleged promises. (Paper 54, at 65-66).   Defendants contend that Plaintiffs' renewed allegations fail to identify a clear and definite promise, to allege adequately that Defendants reasonably expected the promise to induce reliance, and to allege adequately that reliance on the

promise was reasonable.   The adequacy of a promissory estoppel claim is not analyzed under the heightened pleading standard of Fed.R.Civ.P. 9(b), but rather under Fed.R.Civ.P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."   *See, e.g.*, *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F.Supp.2d 821, 825 (N.D.Tex. 2001); *Dycus v. Libbey-Owens-Ford Co.*, 52 F.Supp.2d 829, 832 (N.D.Ohio 1999).

Plaintiffs allege that Defendants made clear and definite promises that Orteck would be the exclusive distributor of certain tire brands in the United States, that Defendants would not sell tires to customers on Orteck's customer list, and that Defendants would pay half of the expenses associated with equipping and operating a tire warehouse in Maryland and would lease the facility if Plaintiffs purchased it.   (Paper 58 ¶ 270).   Plaintiffs also allege that Defendants "had a reasonable expectation that their promises would induce action or forbearance by the Plaintiffs[,]" that "Plaintiffs, in fact, were induced to take actual and reasonable action or forbearance[,]" and that "[t]he detriment caused to the Plaintiffs . . . can only be avoided by the enforcement of the promises." (*Id.* ¶¶ 271-73).

Defendants argue that Plaintiffs' allegations of three clear promises are not supported by the email messages referenced and relied upon in the second amended complaint.   Plaintiffs allege

28

that each of the clear promises was made orally, in addition to alleging that emails confirm some of the promises.  Plaintiffs allege that the promises related to the warehouse agreement were made in two oral discussions, one in person and one over the telephone.  (Paper 58 ¶¶ 130, 132).  Plaintiffs also allege that the promise not to sell to customers on Orteck's customer list was made during a conversation between Sonny Veen and Brian Chan.  (*Id.* ¶ 43).  Finally, Plaintiffs allege that four promises regarding the exclusive dealership, which confirmed this arrangement and extended it to cover additional tire brands, were made to Sonny Veen at personal meetings with Defendants' representatives in Las Vegas, China, and New York.  (*Id.* ¶¶ 28, 35, 37, 40).  These allegations of oral promises are adequate, regardless of whether the email messages confirm any of these promises, to plead the first element of promissory estoppel.

Defendants also argue that Plaintiffs have not pled adequately that Defendants had a reasonable expectation that Plaintiffs would rely on the alleged promises.  Plaintiffs' allege only the legal conclusion that Defendants had this reasonable expectation in paragraph 271 of the second amended complaint, but Plaintiffs' allegations in other paragraphs, incorporated by reference into the promissory estoppel allegations in paragraph 268, allege actual facts to support this legal conclusion.

With respect to the warehouse agreement allegations, Plaintiffs allege that Brian Chan, acting as an agent for the other Defendants (*id.* ¶ 42), explicitly advised Orteck to buy the warehouse to accommodate Defendants' "big plans" for the facility and their relationship with Orteck. (*Id.* ¶ 132). This factual allegation could support an inference that Defendants reasonably expected Plaintiffs to take their advice and purchase the facility.

At the same time that Sonny Veen and Defendants' representatives originally discussed the exclusive distributorship promise in Las Vegas, Orteck alleges that it provided Defendants with specifications for additional tires that Orteck believed would be well-received by its customers. (*Id.* ¶¶ 28, 31). Defendants also allegedly later informed Orteck that tires conforming to these specifications would be produced in the brand over which Orteck alleges it was promised an exclusive distributorship. (*Id.* ¶¶ 31, 36-37). This evidence is sufficient to support Plaintiffs' allegation that Defendants expected to undertake efforts, including marketing Defendants' tires, in reliance on the promise of an exclusive distributorship. (*Id.* ¶¶ 29, 271).

Plaintiffs' allegations of the customer list promises are also sufficient to support an inference that Defendants reasonably expected Plaintiffs to rely on the alleged promise that Defendants would not sell to customers on Orteck's customer list. Plaintiffs allege that Chan's promise, on behalf of Defendants, not to sell to

customers on Orteck's customer list was made immediately after Chan had requested a copy of Orteck's customer list for Defendants. (*Id.* ¶ 43).  These alleged factual circumstances support an inference that Defendants reasonably expected Orteck to act in reliance, by turning over its customer list, on the promise that Defendants would not sell to these customers.

Finally, Defendants argue that it would have been unreasonable for Plaintiffs to rely on Defendants' alleged promises without a more formal written contract.  Defendants argue that no reasonable commercial entity would rely on an oral promise of an exclusive distributorship.  They also contend that any reliance on any of the alleged promises by Plaintiffs was unreasonable because the email messages referred to in the complaint did not explicitly state or confirm the promises Plaintiffs allege Defendants and their agents made.  As discussed above, Plaintiffs have alleged that each of the alleged promises was made orally.  Plaintiffs also allege that reliance on the promises was supported because some of these promises were confirmed, at least implicitly, by email correspondence with Defendants; because of Plaintiffs' prior exclusive distribution arrangement with the previous owners of the Kiayuan factory, and because, at the time of Plaintiffs' reliance, Defendants were performing and had performed other aspects of their agreements with Orteck.  (Paper 58 ¶¶ 108-124, 141-147).  A determination of whether reliance was reasonable under the

31

circumstances is necessarily a complex question of fact, and Plaintiffs have alleged at least some actual facts in support of their argument that their reliance was reasonable. As such, it is impossible to say as a matter of law, at this stage of the proceeding, that Plaintiffs' allegations are insufficient to support a finding of reasonable reliance.

Defendants do not challenge the adequacy of Plaintiffs' allegations as to its actual reliance on the alleged promises or as to the damages allegedly suffered by Plaintiffs as a result of this reliance. Plaintiffs' allegations are adequate to state a promissory estoppel claim, and Defendants motion to dismiss will be denied with respect to Count X of the second amended complaint.

## VII. Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be granted with respect to Plaintiffs' claims for fraud, RICO violations, and negligent misrepresentation, but will be denied with respect to Plaintiffs' promissory estoppel claims. A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge